**In re the MARRIAGE OF Mark S. DEDIE, Petitioner**

**and**

**Melissa J. SPRINGSTON, Respondent.**

**No. 11SA80.**

Supreme Court of Colorado,
En Banc.

June 27, 2011.

Sherman & Howard L.L.C., Jordan M. Fox, Denver, Colorado, Attorneys for Petitioner.

Fairfield and Woods, P.C., Lee Katherine Goldstein, Denver, Colorado, Attorneys for Respondent.

Chief Justice BENDER delivered the Opinion of the Court.

## I. Introduction

This original proceeding concerns an interstate child custody dispute between a divorced mother and father. The parties' two children currently live in Colorado with their mother, Melissa J. Springston, and step-father. The boy is eleven years old, and the girl is nine years old. The father, Mark S. Dedie, lives in New York State. In this case, a New York family court referee ruled that New York no longer had exclusive, continuing jurisdiction over an initial child custody determination entered in New York, which gave primary physical custody of the children to the mother, because the children had not lived in New York for almost four years and all the information concerning the children was located in another state.

The father then filed a separate action in a New York Supreme Court, the equivalent of our district court, to modify the initial child custody determination. Although the mother moved to dismiss the action based on the family court referee's ruling that New York no longer had exclusive, continuing jurisdiction, the New York Supreme Court exercised jurisdiction and modified the initial determination, granting temporary sole custody of the children to the father. The father now asks Colorado to ignore the family court referee's ruling and enforce the New York Supreme Court's custody modification determination.

As with our recent decision in *In re L.S.*, 257 P.3d 201 (Colo.2011), this interstate child custody dispute requires us to determine whether Colorado is obligated to enforce a prior child custody determination rendered by a court in a sister state, here, the New York Supreme Court. To reach this determination, we follow controlling federal law, the Parental Kidnaping Prevention Act of 1980, 28 U.S.C. § 1738A (2010) (PKPA). The PKPA extends the requirements of the Full Faith and Credit Clause to custody determinations and, thereby, furnishes a rule of decision for state courts to use in adjudicating interstate custody disputes.

We hold that, because the New York family court referee relinquished jurisdiction, the New York Supreme Court did not have jurisdiction according to New York law and, therefore, the New York Supreme Court did not exercise jurisdiction consistent with the PKPA. Consequently, the PKPA does not require Colorado to give full faith and credit to the New York Supreme Court custody modification determination. Hence, we hold that Colorado is not required to enforce that order. We now make the rule to show cause absolute and remand the case to the trial court for proceedings consistent with this opinion.

## II. Facts and Procedural History

The parties in this case divorced in 2004 in New York State, and a court of that state issued an initial custody determination awarding primary physical custody of the two children to the mother and granted the

father visitation rights. In 2006, the mother and the children moved to Massachusetts. The parties dispute whether the father agreed to the move.

In March 2010, seeking to enforce his visitation rights granted by the initial custody determination, the father filed an action to enforce visitation in the Supreme Court of Monroe County, New York. The parties agreed to have the matter heard and decided by a family court referee. The mother filed a motion to dismiss the action for lack of jurisdiction. At a June 2010 hearing, the referee granted the mother's motion to dismiss because of the length of time that the children had not lived in New York State and because all the information concerning the children was located in another state. In so ruling, the family court referee reasoned:

*Even though the divorce was granted here in New York State and Mr. Dedie is back here, residing, I find that that New York no longer has jurisdiction because of the length of time ....* [The children] haven't been here in New York State since 10/06. They haven't resided here. New York State doesn't have jurisdiction, nor is it the proper jurisdiction for [this] matter.

The issue revolves around the best interest of the children. The children are an integral part of that. Any attorney for the children would need to have free and unhampered contact ... an attorney can't do it with the children being [in another state].

... *All the information is [in Massachusetts]* .... The children are there. At this point *I am going to dismiss this for lack of jurisdiction here in New York State.*

(Emphasis added). The family court referee then advised the father that he should file a petition for visitation in Massachusetts, and it advised the mother that "[y]ou do not need to appear here in New York State on this matter any further." The mother and children then moved to Colorado in July 2010.

The father neither appealed the family court referee's determination dismissing the case for lack of jurisdiction nor filed a petition for visitation in Massachusetts. Instead, on September 30, 2010, (six months later) the father filed in the Supreme Court of Monroe County a motion seeking to hold the mother in contempt for failure to comply with the initial custody determination and to modify the initial determination to give the father custody of the children. The mother filed a motion to dismiss, arguing that the family court referee declined jurisdiction and dismissed the cased based on its decision that New York no longer had exclusive, continuing jurisdiction.

Despite the contrary ruling by the family court referee and without explanation, the Supreme Court held that it had "exclusive continuing jurisdiction to enforce and to modify" the initial custody determination. The Supreme Court then ordered the father be given temporary custody and primary physical residence of the children, and it directed the mother to deliver immediately the children to the father.

Because the mother and the children were living in Colorado, the father then petitioned the Denver district court to enforce the New York Supreme Court custody modification order. Referring only to the Supreme Court modification determination, the Denver district court determined that New York State had continuing, exclusive jurisdiction over the initial custody determination. It reasoned both that the Supreme Court's order "arises out of a proceeding that began in October 2010[, l]ong before Colorado could have claimed jurisdiction," and that, when the Supreme Court modified the initial custody determination, it exercised jurisdiction in substantial conformity with the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). As such, the Denver district court ordered the mother to turn over physical custody of the children to the father and authorized all Colorado law enforcement officers "to take whatever action may be necessary to compel [the mother's] compliance with this Order."

The mother then filed in this court an original action under C.A.R. 21, arguing that the New York Supreme Court lacked jurisdiction to modify the initial custody determination because the family court referee had previously determined that New York State

no longer had exclusive, continuing jurisdiction and, therefore, that Colorado was not required to enforce the subsequent New York custody modification order. We issued an order and rule to show cause, and we now make the rule absolute.

## III.  Jurisdiction

■ We first address whether an original proceeding is proper to review the trial court order challenged in this case. This court may exercise original jurisdiction under C.A.R. 21 where a trial court erred as a matter of law and appeal is not an adequate remedy. *See In re Marriage of Hall*, 241 P.3d 540, 542 (Colo.2010). In this particular case, enforcing the New York custody modification order pending appeal would require the children immediately to relocate to New York State, uprooting their lives and separating them from their mother, who has been their primary caretaker for most of their lives. The modification of custody, especially where the court requires the child to move out of state, can significantly impact the child's life by disrupting any degree of stability the child has achieved. *Spahmer v. Gullette*, 113 P.3d 158, 163 (Colo.2005) (stating that the goal of a modification proceeding is to maintain, in the best interest of the child, any degree of stability in the post-decree family unit). Under these circumstances, appeal is not an adequate remedy, and we find it appropriate to exercise our original jurisdiction.

## IV.  Analysis

### A.  Summary

■ We turn next to the question of whether the Denver district court erred as a matter of law when it ordered that Colorado must enforce the New York Supreme Court custody modification determination and that the mother must transfer custody of the children to the father.

As we discussed in *In re L.S.*, 257 P.3d at 203–04, the PKPA, 28 U.S.C. § 1738A, in tandem with the UCCJEA as adopted by Colorado, §§ 14–13–101 to –403, C.R.S. (2010), and New York, N.Y. Dom. Rel. Law §§ 75 to 78–a (McKinney 2010), govern whether Colorado must enforce a child custody determination rendered by another state's court. In this case, the New York Supreme Court entered a custody determination modifying its initial child custody determination after the New York family court referee had already ruled that New York no longer had exclusive, continuing jurisdiction over this matter. The father now asks a Colorado court to enforce the custody modification determination contrary to the family court referee's ruling.

Under these circumstances, the PKPA and Colorado's UCCJEA require us to inquire whether Colorado must recognize and enforce the New York Supreme Court's custody modification determination, not whether Colorado may exercise jurisdiction over this matter. *People ex rel. A.J.C.*, 88 P.3d 599, 611 (Colo.2004).

The father contends that the Denver district court was correct in enforcing the New York Supreme Court modification order because Colorado is bound by the New York Supreme Court's determination that New York had exclusive, continuing jurisdiction over the initial custody determination issued there. The mother argues that the Denver district court erred when it ordered enforcement of the New York Supreme Court custody modification determination. She contends that, because the family court referee determined that New York did not have exclusive, continuing jurisdiction, the New York Supreme Court could not, thereafter, exercise jurisdiction over the initial custody determination.

In deciding whether to enforce the New York Supreme Court custody modification determination, we begin by discussing the PKPA. We also briefly discuss Colorado's UCCJEA and Colorado case law, which incorporate the requirements of the PKPA. We then consider whether the New York Supreme Court exercised jurisdiction in accordance with the PKPA, which necessarily requires us to determine whether the New York Supreme Court exercised jurisdiction in accordance with its own law.

We hold that the New York Supreme Court did not have jurisdiction, under New York law, to enter the custody modification determination because the family court refer-

ee previously determined that New York lacked exclusive, continuing jurisdiction over the initial child custody determination. Therefore, because the Supreme Court did not exercise jurisdiction in compliance with its own law, it did not exercise jurisdiction consistent with the PKPA, and, consequently, Colorado is not obligated to accord the New York Supreme Court custody modification order full faith and credit.

## B. The Applicability of the PKPA and Colorado Law

■ Whether a trial court has jurisdiction over a child custody proceeding presents a question of law, which we review de novo. *In re L.S.*, 257 P.3d at 204.

■ The PKPA controls whether Colorado must enforce a child custody determination entered by a court of another state. *Id.* at 204–05; *A.J.C.*, 88 P.3d at 611. By extending the requirements of the Full Faith and Credit Clause to custody determinations, the PKPA "furnish[es] a rule of decision for [state and federal] courts to use in adjudicating custody disputes" and, thereby, dictates the outcome of interstate jurisdictional conflicts in child custody cases. *Thompson v. Thompson*, 484 U.S. 174, 183, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988).

■ The PKPA acts as a rule of determination in interstate custody disputes by "impos[ing] a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the [PKPA]." *Id.* at 175–76, 108 S.Ct. 513. Section (a) of the PKPA states,

> The appropriate authorities of every State *shall enforce according to its terms,* and shall not modify except as provided in [this Act], *any custody determination . . . made consistently with the provisions of this section* by a court of another State.

28 U.S.C. § 1738A(a) (emphasis added). Hence, the PKPA mandates that, when a state enters a custody determination, a second state must enforce that determination so long as the state made the determination "consistent with the provisions of the [PKPA]." *Thompson*, 484 U.S. at 176, 108

S.Ct. 513; 28 U.S.C. § 1738A(a). Conversely, however, if a state court's custody determination fails to conform to the PKPA's requirements, then the custody determination is not entitled to full faith and credit enforcement in another state. *In re L.S.*, 257 P.3d at 204–05.

Because Colorado has adopted the UCCJEA, a uniform state law which was promulgated after the PKPA and intended to harmonize state law with the provisions of the PKPA, Colorado statutes and case law incorporate the interstate enforcement requirements of the PKPA. *Id.* at 205–06. Colorado statutes pertaining both to jurisdiction over child custody disputes and to enforcement of foreign custody decrees are substantively identical to the PKPA. *Id.* at 205–06; *compare* 28 U.S.C. § 1738A(c)-(d), (h) (providing rules for initial jurisdiction, continuing jurisdiction, and jurisdiction to modify), *with* §§ 14–13–201 to –203, C.R.S. (2010) (same).

As relevant here, the UCCJEA as adopted by Colorado requires Colorado courts to recognize and enforce a child custody determination of a court of another state "if the latter court exercised jurisdiction in substantial conformity" with or under factual circumstances satisfying the jurisdictional requirements of the UCCJEA. § 14–13–303(1), C.R.S. (2010). The official comment to section 14–13–303 makes clear that this statute imposes on Colorado a "duty to enforce . . . a child custody determination of another State *[that is] consistent with the enforcement . . . provisions of the PKPA.*" (Emphasis added). Likewise, in *A.J.C.*, this court recognized that the PKPA controls whether Colorado must enforce another state's child custody determination. 88 P.3d at 611. Therefore, when another state has already entered a child custody determination, "we inquire . . . whether the first-in-time court's exercise of jurisdiction was in accordance with the PKPA." *Id.*

Because Colorado statutes and case law incorporate the requirements of the PKPA, if a sister state has exercised jurisdiction in accordance with the PKPA, then its exercise of jurisdiction would necessarily be in substantial conformity with Colorado law. *In re*

*L.S.*, 257 P.3d at 207. Accordingly, we now consider whether the New York Supreme Court's exercise of jurisdiction, which contradicts the New York family court referee's ruling, was in accordance with the PKPA such that Colorado must recognize and enforce the custody modification determination.

## C. Whether the New York Supreme Court's Exercise of Jurisdiction Accorded with the PKPA

The PKPA provides that a state's custody determination is made consistently with the PKPA when: (1) the court of the state has jurisdiction under its own law, 28 U.S.C. § 1738A(c)(1); and (2) the exercise of jurisdiction meets one of the conditions set out in 28 U.S.C. § 1738A(c)(2).[1] As relevant to this case, subsection (c)(2)(E) allows for jurisdiction where "the court has continuing jurisdiction pursuant to subsection (d)" of the PKPA. Subsection (d) provides that a state has continuing jurisdiction over its own custody determination as long as: (1) the child or a contestant remains in that state; and (2) the state that rendered the initial custody determination has jurisdiction under its own law:

> The jurisdiction of a court of a State which has made a child custody ... determination consistently with the provisions of [the PKPA] continues as long as the requirement of subsection (c)(1) of [the PKPA] continues to be met and such State remains the residence of the child or of any contestant.

*Id.* § 1738A(d). Subsection (c)(1) requires that a court making a custody determination must have jurisdiction under its own law. *Id.* § 1738A(c)(1) ("A child custody ... determination made by a court of a State is consistent with the provisions of this section only if ... such court has jurisdiction under the law of such State."); *see also Weyant v. Barnett*, 302 A.D.2d 801, 756 N.Y.S.2d 322, 324 (N.Y.App.Div. 3d Dep't 2003) ("Where Family Court has previously made a child custody determination ... and one of the parties is still a resident of New York, Family Court's jurisdiction continues only so long as it has jurisdiction under New York's own law.").

Both subsections (c) and (d) of the PKPA require that, in order to exercise jurisdiction consistently with the PKPA, a state court must have jurisdiction under its own law. For that reason, we must next resolve whether the New York Supreme Court could exercise jurisdiction under New York law after the New York family court referee had already ruled that New York no longer had exclusive, continuing jurisdiction. We first discuss New York's UCCJEA, which provides that a New York court can exercise exclusive, continuing jurisdiction to modify an initial child custody determination "until" a court of New York decides to relinquish that jurisdiction pursuant to certain statutory factors. N.Y. Dom. Rel. Law § 76–a.

New York Domestic Relations Law section 76–a(1) governs whether New York has exclusive, continuing jurisdiction to modify its own initial child custody determination. Subsection 76–a(1) provides that, when a New York court has made an initial child custody determination, New York "has exclusive, continuing jurisdiction over the determination *until*" either of the following two contingencies occurs:

> (a) *a court of [New York] determines that neither the child, the child and one parent, nor the child and a person acting as a parent* have a *significant connection* with this state *and* that *substantial evidence is no longer available in this state* concerning the child's care, protection, training, and personal relationships; or

> (b) a court of [New York] or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

(Emphasis added.)[2] Only the first of these two contingencies is relevant to this case.

---

1. As stated before, New York has adopted the UCCJEA, and, therefore, like Colorado, the jurisdictional provisions of New York law are substantively identical to the PKPA. *See* 28 U.S.C. § 1738A(b)-(d), (h); N.Y. Dom. Rel. Law §§ 75 to 78–a.

2. New York Domestic Relations Law section 76–a(2) states that if New York does not have continuing, exclusive jurisdiction, then a New York court may modify its own custody determination "only if it has jurisdiction to make an initial determination under [N.Y. Dom. Rel. Law

The father presently resides in New York and, thus, subsection (b) does not apply.

The first contingency, subsection (1)(a) of New York Domestic Relations Law section 76–a, mandates that to relinquish exclusive, continuing jurisdiction, a New York court must find both that: (1) "neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with [New York]"; and (2) "substantial evidence is no longer available in [New York] concerning the child's care, protection, training, and personal relationships."

The official commentary discussing New York Domestic Relations Law section 76–a explains that this provision requires that "[a]s long as the child, or one parent, or a person acting as a parent reside in New York, [New York] possesses jurisdiction *unless and until* a New York court is convinced to decline jurisdiction." *Id.* § 76–b cmt. (discussing both continuing jurisdiction under section 76–a and jurisdiction to modify another state's custody order under section 76–b) (emphasis added). A New York court may determine that it does not have exclusive, continuing jurisdiction where "the relationship between petitioner and the children has become so attenuated that a court could no longer find significant connections and substantial evidence," regardless of whether the parent petitioning the court continues to reside in New York. *King v. King,* 15 A.D.3d 999, 790 N.Y.S.2d 339, 340–41 (N.Y.App.Div. 4th Dep't 2005) (citations omitted); *accord Felicia McM. v. Jerrold L.W.,* 51 A.D.3d 501, 859 N.Y.S.2d 7, 8 (N.Y.App.Div. 1st Dep't 2008).

The official commentary to New York Domestic Relations Law section 76–a further explains that only a New York court can make the determination to surrender exclusive, continuing jurisdiction. N.Y. Dom. Rel. Law. § 76–b cmt. New York Domestic Relations Law section 75–a defines "court" to

mean "an entity authorized under the law of a state to establish, enforce, or modify a child custody determination." Under New York's Civil Practice Law and Rules, a court may appoint a referee to determine an entire action or specific issues, and a referee has all the powers of a court performing a like function. *See* N.Y. C.P.L.R. § 4301 (McKinney 2010) ("A referee to determine an issue or to perform an act shall have all the powers of a court in performing a like function."); *id.* § 4311 (stating that a referee may "determine the entire action or specific issues, [ ] report issues, [ ] perform particular acts, or [ ] receive and report evidence only"). When assigned to determine issues in a civil case, referees "have powers identical to those of a Justice of [a New York] Supreme Court." *Lipton v. Lipton,* 128 Misc.2d 528, 489 N.Y.S.2d 994, 997 (N.Y.Sup.Ct.1985) *aff'd in part,* 119 A.D.2d 809, 501 N.Y.S.2d 437 (N.Y.App.Div. 2d Dep't 1986).

Therefore, under New York law, a family court referee constitutes a court of New York for the purposes of determining whether New York has exclusive, continuing jurisdiction under New York Domestic Relations Law section 76–a. *See* N.Y. Dom. Rel. Law §§ 75–a, 76–a(1); N.Y. C.P.L.R. §§ 4301, 4311; *Lipton,* 489 N.Y.S.2d at 997. Hence, if a family court referee determines that New York no longer has exclusive, continuing jurisdiction, then jurisdiction would no longer exist in any New York court. *See* N.Y. Dom. Rel. Law §§ 76–a(1), 76–b cmt.

In this case, the family court referee determined that New York State no longer had exclusive, continuing jurisdiction over the child custody determination. Although the record contains few specific findings regarding the children's connections to New York, the record establishes that the children have lived with their mother outside of New York since 2006, almost four years before the father filed his first petition concerning the

§ 76]." Although the New York Supreme Court concluded it had jurisdiction based on exclusive, continuing jurisdiction and did not decide whether it would have jurisdiction to make an initial custody determination, we note that it appears that the New York Supreme Court did not have jurisdiction to make an initial custody determination under New York Domestic Relations Law

section 76. From our reading of section 76 and the facts of this case, it appears that Massachusetts, not New York, was the home state of the child when the father initiated the modification proceeding and that the children likely no longer had a significant connection to New York State other than their father's residence. *See* N.Y. Dom. Rel. Law § 76.

children. During this time, the children visited their father in New York infrequently for short periods of time. The children have a half-sibling in New York, but no New York professionals contribute to the children's care, protection, or training.

At the time the father filed the first enforcement petition in March 2010, the children had not lived in New York in almost four years. Given this amount of time, the family court referee reasoned:

> Even though the divorce was granted here in New York State and Mr. Dedie is back here, residing, I find that that New York no longer has jurisdiction because of the length of time .... [The children] haven't been here in New York State since 10/06.... New York State doesn't have jurisdiction, nor is it the proper jurisdiction for [this] matter.
>
> The issue revolves around the best interest of the children. The children are an integral part of that. Any attorney for the children would need to have free and unhampered contact ... an attorney can't do it with the children being [in another state].
>
> ... All the information is [in Massachusetts] .... The children are there.

(Emphasis added).

Although the referee did not use the specific words "significant connection" or "substantial evidence" contained in New York Domestic Relations Law section 76–a, implic-

it in the referee's reasoning is the conclusion that, because "all the information is [in Massachusetts]," New York does not have access to significant evidence concerning the children and their care, protection, training, and personal relationships. Hence, even assuming that the referee considered the children to have maintained a significant connection to New York based on their periodic visits with their father, the referee dismissed the case for lack of jurisdiction because the children had not lived in New York State for almost four years and, thus, New York did not have substantial evidence concerning the children's care, protection, training, and personal relationships.[3]

In addition, the family court referee did not decline jurisdiction because it considered Massachusetts to be a more convenient forum but, rather, determined that New York did not have exclusive, continuing jurisdiction over the case. The referee ruled, "I do not believe New York has any further jurisdiction in this matter" and "I am going to dismiss this for lack of jurisdiction here in New York State." The referee then advised the father that he should file a petition for visitation in Massachusetts, and it advised the mother that "[y]ou do not need to appear here in New York State on this matter any further."

Under these circumstances, it appears the family court referee determined that New York State no longer had exclusive, continuing jurisdiction under New York law because

---

**3.** We note that our reading of New York law supports the family court referee's determination that New York does not have exclusive, continuing jurisdiction because "substantial evidence is no longer available in [New York] concerning the child[ren]'s care, protection, training, and personal relationships." N.Y. Dom. Rel. Law § 76–a(1)(a).

The New York Court of Appeals has held that "substantial evidence" concerning the child's present and future existed in New York under circumstances where evidence "ha[d] been gathered [in New York courts] throughout the lengthy history of this proceeding" and "[s]ignificant among this evidence is the testimony and report of the [New York] forensic psychologist, who has been involved in this case, at the request of the court, since 1992 when the child was [eighteen months] old." Vernon v. Vernon, 100 N.Y.2d 960, 768 N.Y.S.2d 719, 726, 800 N.E.2d 1085 (2003). Applying these same factors in an earlier

case, the Third Department of the New York Appellate Division considered the location of the "child's teacher, therapist, grandmother, friends and doctors" to decide that substantial evidence concerning the child's welfare was more readily available in another state. Ginn v. Strafaci, 223 A.D.2d 883, 636 N.Y.S.2d 230, 231 (N.Y.App.Div. 3d Dep't 1996) (applying a previous version of the statute).

In addition, the facts of Zippo v. Zippo are similar to the facts of this case. 41 A.D.3d 915, 837 N.Y.S.2d 771, 772 (N.Y.App.Div. 3d Dep't 2007). In Zippo, the Third Department of the New York Appellate Division concluded that the family court properly found that New York did not have continuing jurisdiction where the child had not lived in New York in six years, only returned to New York once a year for a three-day visit, and there was no evidence in New York concerning the child's care, protection, training, and personal relationships. Id.

"substantial evidence is no longer available [in New York] concerning the child[ren]'s care, protection, training, and personal relationships." New York Dom. Rel. Law. § 76–a(1)(a). New York Domestic Relations Law section 76–a(1) provides that New York has exclusive, continuing jurisdiction "until" a court of New York determines otherwise, as the family court referee did in its June 2010 ruling. Therefore, because the family court referee had already ruled that New York did not have exclusive, continuing jurisdiction, the New York Supreme Court did not have jurisdiction over this matter in September 2010 to entertain the father's motion to modify custody.[4]

Consequently, because the New York Supreme Court did not have jurisdiction over this matter under New York law, the PKPA does not require Colorado to accord full faith and credit to the New York Supreme Court custody modification determination. Hence, the Denver district court erred as a matter of law when it ordered enforcement of the New York Supreme Court custody modification determination.

## V. Conclusion

For the reasons stated above, we make the rule to show cause absolute, and we remand the case to the trial court for proceedings consistent with this opinion.

Justice COATS dissents, and Justice MÁRQUEZ joins in the dissent.

Justice MARTINEZ does not participate.

Justice COATS, dissenting.

Largely for the reasons articulated in my dissenting opinion in *In re L.S.*, 257 P.3d 201 (Colo.2010) (Coats, J., dissenting), I disagree with the majority opinion in this case as well. As I indicated there, I consider our jurisdiction to modify or fail to enforce an initial child-custody order of another state to be governed by our enactment of the UCCJEA, which requires us to accept a determination by that state of its own jurisdiction, as long as that determination was made on the basis of provisions substantially conforming to the

procedural requirements and jurisdictional standards of the UCCJEA. *See* §§ 14–13–206(1), 303(1), C.R.S. (2010). I therefore respectfully dissent.

In addition to the reasons offered in that opinion, I note only that in this case the majority not only challenges the New York Supreme Court's application of the UCCJEA in determining its own jurisdiction, but also the correctness of its refusal to be bound by a ruling of a family law magistrate of its own jurisdiction. There does not appear to be any question that the majority's reversal of the Colorado district court's decision to enforce New York's child-custody determination rests entirely on the earlier declination of jurisdiction by a New York magistrate. The UCCJEA permits a state's exclusive jurisdiction to continue only until a court of that state determines that a parent no longer has a significant connection and evidence is no longer available in that state concerning the child's care, protection, training, and personal relationships. § 14–13–202(1)(a), C.R.S. (2010); N.Y. Dom. Rel. Law § 76–a(1)(a) (McKinney 2010). Although the New York court's order to return the children to their father preceded any order or assertion of jurisdiction by this state, and therefore may well have been justified on other grounds, its finding of "exclusive, continuing jurisdiction," based on New York's original 2004 custody determination, makes clear that it did not accept the magistrate's earlier ruling.

The majority reviews the New York magistrate's ruling in considerable detail to satisfy itself that the magistrate properly determined that New York no longer had exclusive, continuing jurisdiction. Although the majority also satisfies itself that a family law referee is a court under New York law, it does not consider whether the magistrate's ruling constituted a *final* decision of a court of New York, amounting to a binding decision of the state declining jurisdiction as contemplated by the PKPA and UCCJEA, nor should it have done so. Whatever we might consider to be the merits of the New York Supreme Court's decision that it was

---

4. In addition, the New York Supreme Court provided no guidance as to why it chose to exercise jurisdiction despite the family court referee's contrary ruling.

not bound by the magistrate's earlier ruling, I believe the effect of a ruling by a New York family magistrate on the courts of that state is a matter of state law, to which the New York Supreme Court's resolution is entitled to deference. Of paramount importance, in any event, is the credit to be afforded by this state to the New York court's child-custody determination once it is ascertained that New York's determination was based on virtually the same provisions of the UCCJEA accepted by this state.

Because I believe the majority errs by going behind the New York court's determination of its own jurisdiction, and particularly so in this case by challenging the New York court's determination that an earlier ruling by a family law magistrate did not constitute the final decision of the state concerning its continuing jurisdiction, I respectfully dissent.

I am authorized to state that Justice MÁRQUEZ joins in this dissent.